UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JAIME AROLDO DUARTE-LOPEZ,<br><br>Defendant. | 4:15-CR-40106-KES<br><br>ORDER REGARDING USE OF TRANSCRIPTS |

Defendant, Jaime Aroldo Duarte-Lopez, moves the court *in limine* to preclude the admission of transcripts that have been prepared by the government of recorded conversations that have been translated from Spanish to English. Docket 69. The government resists the motion. For the following reasons, the court denies the motion.

## DISCUSSION

The Eighth Circuit has long recognized that the government may present at trial a defendant's conversations with a government informant that have been electronically recorded with the informant's consent. *United States v. McMillan*, 508 F.2d 101, 104 (8th Cir. 1974) (citing cases).[1] Additionally, transcripts of those conversations may be shown to the jury to assist the jurors in following along with the recorded conversations. *See, e.g., United States v.*

---

[1] *McMillan*, 508 F.2d at 104, also identifies the foundational requirements for admitting such recordings into evidence. Defendant appears to only contest the foundational requirements for admission of the transcripts rather than the actual recordings.

*Delpit*, 94 F.3d 1134, 1147-48 (8th Cir. 1996) ("It is well settled that the jury may use transcripts of wiretapped conversations during trial and deliberations.") (citing cases); *United States v. Martinez*, 951 F.2d 887, 888 (8th Cir. 1991).

In *United States v. Gonzalez*, 365 F.3d 656 (8th Cir. 2004), the Eighth Circuit described "the appropriate method for introducing transcripts of wiretapped conversations in criminal trials." *Id.* at 660. First, the parties should attempt to stipulate to an official transcript that is usable and agreeable to both sides. Failing that, "then each side should produce its own version of a transcript or its own version of the disputed portions." *Id.* (citation omitted). Additionally, "each side may put on evidence supporting the accuracy of its version or challenging the accuracy of the other side's version." *Id.*

I. **Foundation**

Defendant first argues that the government's transcripts lack foundation and cannot be admitted into evidence. The government responds that the transcripts were prepared by Matthew Cousins, a language specialist with the Joint Language Training Center in Riverton, Utah. According to the government, Cousins is fluent in Spanish, listened to the recorded conversations, translated what was said from Spanish to English, and prepared both a Spanish and English transcript of the conversations. Thus, according to the government, Cousins will provide the foundation for the transcripts at trial that defendant insists is lacking.

If the transcripts purport to identify the speakers in the recordings, then foundation can be laid by the individual who recorded or overheard the conversations, prepared the transcripts, and compared the transcripts to the recordings to verify the accuracy of the identification. *United States v. Frazier*, 280 F.3d 835, 849 (8th Cir. 2002). A similar procedure can be followed if the transcripts contain translations of a foreign language into English. *Cf. United States v. Gutierrez*, 367 F.3d 733, 735 (8th Cir. 2004).

The Eighth Circuit has approved of admitting the translated transcripts into evidence when the recorded conversations are primarily in a foreign language. *See United States v. Grajales-Montoya*, 117 F.3d 356, 367 (8th Cir. 1997) (rejecting argument that the trial court abused its discretion by admitting into evidence only the transcripts of the recorded conversations and noting the defendant "has suggested no reliable means of enabling people who do not speak Spanish to interpret inflections in tone, and we cannot think of any, either."); *United States v. Placensia*, 352 F.3d 1157, 1165 (8th Cir. 2003) (translated transcripts of Spanish conversations into English admitted into evidence). For example, in *Guitierrez*, 367 F.3d at 735, the government played recorded conversations that purported to tie the defendant to a large drug conspiracy. Those conversations were in Spanish, so the government sought to use transcripts that translated those conversations into English. The government introduced its translated transcripts during the testimony of a police officer who was fluent in Spanish and had communicated with an alleged co-conspirator. *Id.* The officer laid a proper foundation by listening to

the recordings prior to trial, comparing the transcripts to the recordings, and testifying to the accuracy of the translations. *Id.* The court may then admit the transcript into evidence and the jurors may examine the transcripts like any other evidentiary document. *Placensia*, 352 F.3d at 1166 (explaining that, "as a general rule, jurors may examine any documents properly admitted into evidence," including the transcripts admitted in that case) (citations omitted). If there are disputes as to the proper translation of the conversation, the court should instruct the jury that they are to determine if the translation is accurate. *Gonzalez*, 365 F.3d at 662. Additionally, jurors should be told to rely only on the English translations they are given and not on their own knowledge of the foreign language. *Id.*

If the government lays a sufficient foundation for admission of the transcripts, the court finds the English transcripts are admissible. The court concludes that the government should be given the opportunity to do so at trial.

## II.   Expert Testimony

Related to his first argument, defendant asserts[2] that only an expert in Spanish-to-English translation can vouch for the accuracy of the translated

---

[2] Defendant relies on Rule 604, which states that "An interpreter must be qualified and must give an oath or affirmation to make a true translation." Fed. R. Evid. 604. This rule applies only to "witness interpreters" – those interpreters who "translate questions posed to and answers provided by a witness during examination by counsel or the court." Wright & Miller, Federal Practice & Procedure – Federal Rules of Evidence § 6053. Thus, "Rule 604 does not apply to witnesses who take the stand and testify concerning the meaning in English of documents or other out of court statements. These are

transcript. The requirements for a witness to testify to the accuracy of a transcript is not very high. *See United States v. Baldenegro-Valdez*, 703 F.3d 1117, 1127 (8th Cir. 2013) (explaining there is a "relatively low authentication requirement" under Rule 901 to authenticate a transcript which was also satisfied by the testimony of an informant and a Spanish-speaking linguist). In *Delpit*, for example, the court held that an officer with "nearly 30 years of on-the-job experience" was qualified as an expert to testify to the meaning of drug-related jargon and code words, as well as to translate a particular form of urbanized pig-Latin into English. *Delpit*, 94 F.3d at 1145. In *Gutierrez*, the officer was fluent in Spanish and was able to testify to the accuracy of the translated transcripts. *Gutierrez*, 367 F.3d at 735. And in *Gonzalez*, a former police officer who "worked on more than ten Spanish-to-English wiretap translations for the Drug Enforcement Agency from 1998 to 2003" was competent to testify to the accuracy of the government's transcripts. *Gonzalez*, 365 F.3d at 659. By way of contrast, the Second Circuit in *Kassim v. City of Schenectady*, 415 F.3d 246 (2d Cir. 2005) explained that a witness who "neither speaks nor reads Arabic" and who could not testify to the accuracy of a translated note was not competent to lay a proper foundation for the note's accuracy or admission. *Id.* at 251.

      Here, the government intends to call Cousins as an expert witness to testify about the transcripts. The government states that Cousins is both fluent

---

conventional expert witnesses who are subject to cross-examination, Rule 702, and the requirements of Rule 603." *Id.*

in Spanish and the individual that created the transcripts themselves. Defendant will have the opportunity to cross-examine Cousins regarding his training, education, experience, and methods. The court will reserve ruling on the issue of Cousins' qualifications as an expert until trial.

### III. Accuracy

Defendant also argues that because the transcripts contain numerous designations of "U/I" (presumably shorthand for "unintelligible"), the recordings and transcripts are inaccurate or otherwise unreliable. The Eighth Circuit held in *United States v. Webster*, 84 F.3d 1056 (8th Cir. 1996) that "[a] partially inaudible recording will be inadmissible where the defendant establishes that the unintelligible portions are 'so substantial, in view of the purpose for which the tape[] [is] offered, as to render the recording as a whole untrustworthy.' " *Id.* at 1064 (quoting *United States v. Huff*, 959 F.2d 731, 737 (8th Cir. 1992). Here, defendant has not made such a showing. While there are a number of portions designated as U/I, the substance of the conversations is intelligible. Defendant has acknowledged that he has received copies of each of the recorded conversations. Docket 70 at 2 ("The Government previously produced the audio recordings on which the translated transcripts are ostensibly based."). Thus, defendant can listen to the audio recordings and cross-examine Cousins regarding the portions designated as U/I if the defendant believes those portions are intelligible.

As to the accuracy of the transcripts, "[i]f [the defendant is] concerned about the accuracy of the translations, he [is] free to offer his own version of

the transcripts or otherwise challenge the government's version." *Baldenegro-Valdez*, 703 F.3d at 1127; *see also Gonzalez*, 365 F.3d at 660 (explaining both the prosecution and defense may present their own transcripts as well as "evidence supporting the accuracy of its version or challenging the accuracy of the other side's version."). Defendant has not suggested that he is unable to produce his own transcript or to challenge the accuracy of the government's transcript at trial. Ultimately, the question of a transcript's accuracy is for the jury to determine. *United States v. Perez*, 663 F.3d 387, 394 (8th Cir. 2011) ("[I]t is the function of the finder-of-fact to weigh the evidence presented by the parties as to the accuracy of the proffered translation and to determine the reliability of the translation on the basis of that evidence."). Thus, to the extent defendant contests the accuracy of the recordings and transcripts, he may do so at trial by his own argument and evidence.

## IV.   April 20, 2015, Recording and Transcript

Defendant contends this recording and transcript should be excluded because it concerns events that occurred outside the timeline alleged in the indictment and also involves speakers who are not co-conspirators. Regarding the co-conspirator argument, that is also the subject of defendant's November 11, 2015 motion for a *Bell* hearing. *See* Docket 51 (Motion for Hearing on Admissibility of Any Statements By Alleged Co-Conspirators). Defendant's co-conspirator argument will be addressed prior to trial and therefore the court will not preclude the admission of this recording on that basis at this time.

As to the timeliness argument, the indictment charges that "on or about June 30, 2015," defendant engaged in the crime of conspiracy to distribute a controlled substance. Docket 3. This conversation occurred roughly two months before June 30, 2015. The court will reserve ruling on this issue until the time of trial.

**V.      July 21, 2015, Recording and Transcript**

Defendant contends that this transcript should be excluded for several reasons. The bulk of defendant's argument is that the government's transcript contains numerous summaries of portions of the conversation that the government has deemed unimportant. According to defendants, those summaries constitute inadmissible hearsay and violate the rule against completeness. Additionally, defendant contends he cannot challenge the veracity of the summaries.

The government's July 21, 2015 transcript is not entirely a line-by-line translation of the recorded conversation from Spanish to English. Rather, it summarizes in English certain portions of those conversations. Those summaries purport to tell the reader the gravamen of what was said without providing an actual translation of those parts of the conversation. Such summaries would constitute inadmissible hearsay.

The government represents to the court that it will produce non-summarized transcripts of the recordings for trial. Therefore, according to the government, any infirmity that the summaries present will be cured. On the

government's representation that the full transcripts will be provided prior to trial, the court will not exclude the July 21, 2015, transcript at this time.

## CONCLUSION

Because the government intends to call Cousins as its expert witness to authenticate the translated transcripts and testify to their accuracy, the court will not exclude the transcripts at this time for lack of foundation or expert testimony. Defendant will have an opportunity at trial to question the government's witness concerning the transcripts. Additionally, the court concludes the recordings and transcripts are not so unintelligible as to warrant their exclusion. Defendant is nonetheless free to produce his own transcripts of the conversations and to contest the accuracy of the government's transcripts at trial. Finally, the court will not preclude the admission of the April 20, 2015, or July 15, 2015, recordings and transcripts at this time. Thus, it is

ORDERED that defendant's second motion *in limine* (Docket 69) is denied.

Dated December 15, 2015.

BY THE COURT:

/s/ *Karen E. Schreier*

KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE